UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH NORMAN,

                              Plaintiff,

            v.

DR. OSCAR MARCILLA; FELIX
EZEKWE; MOUNT VERNON HOSPITAL;
DR. MAGILL,

                              Defendants.

No. 17-CV-9174 (KMK)

<u>OPINION AND ORDER</u>

<u>Appearances:</u>

Joseph Norman
Ossining, NY
*Pro Se Plaintiff*

Brendan M. Horan, Esq.
Office of the New York State Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Norman Doe ("Plaintiff") brings this Action, pursuant to 42 U.S.C.

§ 1983, against Felix Ezekwe ("Ezekwe") and Dr. Magill ("Magill") (together, "Provider

Defendants"), Dr. Oscar Marcilla ("Marcilla"), and Mount Vernon Hospital ("Mount Vernon"),

(collectively, "Defendants"), alleging that Defendants were deliberately indifferent to his

medical needs in violation of the Eighth Amendment. (Second Am. Compl. ("SAC") (Dkt. No.

27).)

Before the Court is Provider Defendants' Motion To Dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Not. of Mot. (Dkt. No. 47).) For the following reasons, Provider Defendants' Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Second Amended Complaint, and are taken as true for the purpose of resolving the instant Motion.

On January 7, 2016, while playing basketball at Sing Sing Correctional Facility ("Sing Sing"), Plaintiff injured a finger on his right hand, "causing swelling and excruciating pain." (SAC 5.)[1] Plaintiff was sent to the facility's hospital, where x-rays revealed that his finger was dislocated. (*Id.*) Plaintiff was seen by Defendant Ezekwe, a doctor at Sing Sing, who "made no effort to reset Plaintiff's finger, a basic medical procedure." (*Id.*) However, "recogniz[ing] the seriousness of the injury," Ezekwe ordered that Plaintiff be transported to Mount Vernon Hospital for emergency treatment. (*Id.*)

At Mount Vernon, Plaintiff was treated by Defendant Marcilla, who "made several unsuccessful efforts to realign Plaintiff's finger." (*Id.*) Plaintiff was then discharged from the hospital over his objection. (*Id.*) Marcilla told Plaintiff that he was being discharged because his injury "was not life threatening," and told Plaintiff he would be scheduled to see a bone specialist. (*Id.*) Marcilla scheduled an appointment for Plaintiff to see a bone specialist "on or about February 2016, over a month and a half" after the injury. (*Id.*) In the meantime, Plaintiff's finger was placed into a splint and his right shoulder was stabilized in a sling. (*Id.*) Plaintiff

---

[1] Because the Second Amended Complaint lacks pagination, the Court cites to the ECF-generated page numbers at the upper right corner of each page.

"was compelled to liv[e] in a constant severe pain, unable to use his right hand, and limited from doing his daily activities, including bathing properly, eating and enjoying a meal, exercising, etc." (*Id.*)

On February 27, 2016, Plaintiff was brought to the hospital at Fishkill Correctional Facility ("Fishkill"), where he was treated by Defendant Magill. (*Id.*) During the examination, Magill "noted that th[e] [injury] occurred approximately a month and a half" prior, and asked why Plaintiff's finger had not been aligned sooner by the doctors that had initially treated Plaintiff's finger. (*Id.* at 5–6.) Magill stated that aligning Plaintiff's finger was a "basic medical procedure" that "should have been performed the same day [that] the injury occurred to avoid further damage[] to the finger." (*Id.* at 6.) Magill explained that broken bones start to heal 14 days after an injury, so realignment of the bone should have taken place within this time frame. (*Id.*) Because Plaintiff's previous doctors "failed to perform . . . adequate medical treatment," Plaintiff required surgery to repair his dislocated finger. (*Id.*) Magill explained that the surgery would involve "opening up the finger, then rebreaking the bone, resetting the bone correctly in place[,] and then inserting surgical pins into the bone to keep the bone in place." (*Id.*)

Plaintiff asserts that "[e]ven though Dr. Magill showed a good intention to provide Plaintiff with the proper medical [care]," he nevertheless scheduled Plaintiff's surgery for October 2016, eight months later, which "disregard[ed] the seriousness of Plaintiff's medical condition." (*Id.*) Plaintiff alleges that Magill "must have known" that the delay would diminish Plaintiff's chances of "receiving a successful result" from surgery because he had recognized the problems caused by the prior delays in treatment. (*Id.*) While Plaintiff awaited surgery, "several tests were conducted to determine the condition of Plaintiff's heart." (*Id.*)

On October 22, 2016, Plaintiff was taken to Mount Vernon for his surgery. (*Id.* at 7.) Before he was discharged from the hospital, Plaintiff was told that "after having the sutures removed in two weeks by Dr. Magill, the [surgical] pins would remain inside his finger for a total of six to eight weeks . . . before they would be removed." (*Id.*) However, Plaintiff's pins were ultimately not removed until February 22, 2017, beyond the eight-week period prescribed. (*Id.*) During this time, Plaintiff "complain[ed] to both[] Sing Sing Facility medical staff and the Inmate Grievance Resolution Committee regarding his urgent need to have the pins finally removed, [as] it was extremely painful, and Plaintiff's finger . . . was looking deformed." (*Id.*) Sing Sing's medical staff allegedly claimed that Plaintiff's pins were not removed sooner because he participated in the Family Reunion Program ("FRP") on January 23, 2017, and inmates are "unavailable for any call out for the next 46 [h]ours from the date of [a] scheduled" FRP visit. (*Id.*) However, Sing Sing "had plenty [of] opportunity to schedule . . . an appointment within the time frame set by Dr. Magill, either before or after [his] FRP visit." (*Id.*)

Plaintiff alleges that Defendants' conduct "caused permanent damage[]," including "a visible deformation of his right hand, . . . the inability to use his right hand effectively [or] to perform his daily basic activities, and the pain and suffering experienced from the date of the injury that will last for the rest of Plaintiff's life." (*Id.* at 9.) Plaintiff seeks $150,000 in compensatory damages, and $25,000 in punitive damages. (*Id.*)

B. Procedural Background

Plaintiff filed an initial Complaint on November 21, 2017. (Compl. (Dkt. No. 2).) He was granted in forma pauperis status on January 18, 2018. (Dkt. No. 6).) On February 2, 2018, Chief Judge Colleen McMahon ("Chief Judge McMahon") ordered Plaintiff to file an amended complaint because the initial complaint failed to state a claim as pled. (Order (Dkt. No. 7).)

Plaintiff filed the First Amended Complaint on April 10, 2018.  (First Am. Compl. ("FAC")

(Dkt. No. 8).)  Plaintiff filed the instant Second Amended Complaint on July 24, 2018.  (SAC.)

On November 29, 2018, with leave of the Court, Provider Defendants filed a Motion To

Dismiss.  (Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 48).)

Plaintiff filed a response on January 11, 2019, (Pl.'s Mem. of Law in Opp'n to Mot. ("Pl.'s

Mem.") (Dkt. No. 53)), and Provider Defendants filed a reply on January 30, 2019, (Defs.' Reply

in Further Supp. of Mot. ("Defs.' Reply") (Dkt. No. 54)).  Plaintiff filed a sur-reply on February

22, 2019.  (Pl.'s Sur-Reply in Further Opp'n to Mot. ("Pl.'s Sur-Reply") (Dkt. No. 56).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement."  *Id.*  (alteration and quotation

marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to

relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been

stated adequately, it may be supported by showing any set of facts consistent with the allegations

in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to

relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims

across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

B.  Analysis

Plaintiff alleges that Provider Defendants were deliberately indifferent to his medical needs by unreasonably delaying treatment of his injured finger. (*See* SAC.) Provider

Defendants argue that Plaintiff's allegations fail to state an Eighth Amendment Claim. (*See* Defs.' Mem.)

### 1. Applicable Law

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To state a deliberate indifference claim, Plaintiff must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that Defendants "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017).

"The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone*, 719 F.3d at 138 (quotation marks omitted). In other words, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). Analyzing this objective requirement involves two inquiries: "whether the prisoner was actually deprived of adequate medical care," *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), and "whether the inadequacy in medical care is sufficiently serious," which in turn "requires the [C]ourt to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner," *id.* at 280. "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has suggested the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical

condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). "When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003) (quotation marks omitted).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. This means that the defendant must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *see also Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (quotation marks omitted)). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Id.* (quotation marks omitted). However, "mere negligence" is insufficient to state a claim for deliberate indifference. *Walker*, 717 F.3d at 125 (quotation marks omitted). Moreover, "mere disagreement over the proper treatment [does not] . . . create a constitutional claim," and accordingly, "[s]o long as the treatment given is adequate,

the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

### 2. Application to Plaintiff's Claim

Even assuming Plaintiff has pled a sufficiently serious injury under the objective prong, *see Leacock v. N.Y.C. Health Hosp. Corp.*, No. 03-CV-5440, 2005 WL 1027152, at *5 (S.D.N.Y. May 4, 2005) (finding the plaintiff's injured finger sufficiently serious under the objective prong where medical personnel found the injury was "serious enough to warrant surgical intervention" (citations omitted)), Plaintiff fails to sufficiently allege that the Provider Defendants were "subjectively reckless in their denial of medical care," *Spavone*, 719 F.3d at 138. Plaintiff alleges that after x-rays revealed that Plaintiff's finger was dislocated, Ezekwe "made no effort to reset Plaintiff's finger," but instead "on the same date ordered Plaintiff's transportation to Mount Vernon Hospital for emergency treatment." (SAC 5.) Immediate referral to an outside hospital for treatment, however, does not demonstrate that Ezekwe was deliberately indifferent to a substantial risk of harm. *See James v. Gage*, No. 15-CV-106, 2019 WL 1429520, at *14 (S.D.N.Y. Mar. 29, 2019) (holding that "referral to [a plaintiff's] medical provider is not an act of deliberate indifference" (citation omitted)). Although Plaintiff may have preferred that Ezekwe reset Plaintiff's finger himself rather than refer Plaintiff to an outside hospital for treatment, "[t]he mere fact that an inmate . . . would have preferred some other form of treatment[] does not constitute deliberate indifference." *Crique v. Magill*, No. 12-CV-3345, 2013 WL 3783735, at *3 (S.D.N.Y. July 9, 2013) (citation omitted); *see also Brown v. Montone*, No. 17-CV-4618, 2018 WL 2976023, at *6 (S.D.N.Y. June 13, 2018) (holding the decision to treat an inmate at the internal clinic rather than refer her to an outside hospital "is not a basis for an Eighth Amendment claim," but instead reflects "mere disagreement over the proper

treatment" (quotation marks omitted) (citing, inter alia, *Chance*, 143 F.3d at 703)); *Washington v. Westchester Cty. Dep't of Corr.*, No. 13-CV-5322, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014) ("[I]t is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference." (citation omitted)); *Polletta v. Farinella*, No. 11-CV-660, 2012 WL 6115101, at *2 (D. Conn. Dec. 10, 2012) ("That [the] [p]laintiff did not receive the treatment of his choice, i.e., being taken to an outside hospital, is insufficient to state a claim for deliberate indifference."). Furthermore, Plaintiff does not allege that the failure to reset his finger immediately, rather than later that same day at Mount Vernon, caused Plaintiff's ultimate injury; indeed, Plaintiff alleges that his finger merely needed to be properly aligned within 14 days of his injury. (SAC 6.) Thus, "[w]hile a lengthy, unjustifiable delay in providing necessary medical treatment may constitute deliberate indifference, that is not at all what happened here." *Waller v. DuBois*, No. 16-CV-6697, 2018 WL 1605079, at *7 (S.D.N.Y. Mar. 29, 2018) (citation and quotation marks omitted). Rather, "Plaintiff was transferred by [Ezekwe] to [Mount Vernon] Hospital after h[is] initial examination. Such a delay, if it could even be deemed a delay at all, is not grounds for a deliberate indifference claim." *Johnson v. Tucker*, No. 17-CV-2739, 2018 WL 2976022, at *5 (S.D.N.Y. June 12, 2018) (collecting cases). Finally, although Plaintiff alleges that Magill "criticize[d]" Ezekwe for "fail[ing] to align Plaintiff's finger," (SAC 6), "disagreements among treating medical professionals do not create an inference of deliberate indifference," *Allah v. Switz*, No. 14-CV-5970, 2017 WL 519269, at *7 (S.D.N.Y. Feb. 8, 2017) (collecting cases); *see also McKenna v. Wright*, No. 01-CV-6571, 2002 WL 338375, at *8 (S.D.N.Y. Mar. 4, 2002) ("While a plaintiff may be able to state an Eighth Amendment claim where a doctor acts without medical justification, 'no claim is stated when a doctor disagrees

with the professional judgment of another doctor.'" (italics omitted) (quoting *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990))).  Plaintiff therefore fails to state a deliberate indifference claim against Ezekwe.

With respect to Magill, Plaintiff's only allegation in support of his deliberate indifference claim is that Magill scheduled Plaintiff's surgery for October 2016, eight months after his February 27, 2016 evaluation.  (SAC 6.)[2]  "[A] delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces a conscious disregard of a substantial risk of serious harm."  *Pabon v. Wright*, No. 99-CV-2196, 2004 WL 628784, at *8 (S.D.N.Y. Mar. 29, 2004) (citation and quotation marks omitted), *aff'd*, 459 F.3d 241 (2d Cir. 2006).  That is, "denying or delaying needed treatment for a serious medical condition constitutes deliberate indifference for Eighth Amendment purposes only if," for example, the "official[] delayed care as a form of punishment, ignored a life-threatening and fast-degenerating condition for several days, or delayed major surgery."  *Myrie v. Calvo*, 615 F. Supp. 2d 246, 248 (S.D.N.Y. 2009) (citation omitted).

Here, Plaintiff has not "alleged any conduct or behavior that would suggest the delay was caused by [Magill's] deliberate indifference."  *Bennett v. Care Corr. Sol. Med. Contracter*, No. 15-CV-3746, 2017 WL 1167325, at *8 (S.D.N.Y. Mar. 24, 2017) (citation omitted), *appeal dismissed*, No. 17-1011, 2018 WL 1756123 (2d Cir. Jan. 9, 2018); *see also Stewart v. City of*

---

[2] Plaintiff also alleges that Magill did not remove his surgical pins within the eight-week time frame required; however, Plaintiff appears to attribute this delay to "[t]he medical staff of Sing Sing facility," who he alleges failed to bring Plaintiff to see Magill until well after eight weeks had passed, but who are not named as Defendants in this case.  (SAC 7.)  *See Oliver v. Haddock*, 2009 WL 4281446, at *6 (S.D.N.Y. Dec.1, 2009) (recommending dismissal of complaint where the plaintiff failed to demonstrate that the doctor, as opposed to another individual, selected the date for a medical procedure, and did so "with deliberate indifference to [the plaintiff's] medical need"), *adopted by* 2010 WL 305282 (S.D.N.Y. Jan. 22, 2010).

*New York*, No. 15-CV-4335, 2018 WL 1633819, at *8–9 (S.D.N.Y. Mar. 31, 2018) (dismissing

deliberate indifference claim where there were no allegations that the defendant "acted

*intentionally* to delay the provision of medical treatment in a way that subjected [the plaintiff] to

an excessive risk of harm." (emphasis added)).  In fact, Plaintiff alleges that Magill "showed a

good intention to provide Plaintiff with the proper medical [care]," and also pleads that during

the eight-month period he underwent testing "to determine the condition of [his] heart" in

advance of surgery.  (SAC 6.)  These allegations do not sufficiently plead that Magill

deliberately disregarded a substantial risk to Plaintiff's health.  *See McKiver v. Fed. Bureau of*

*Prisons of N.Y.*, No. 17-CV-9639, 2019 WL 1369460, at *4–5 (S.D.N.Y. Mar. 26, 2019)

(granting motion to dismiss deliberate indifference claim based on broken finger where "x-ray

images were taken, a splint was put on the injured finger, [the plaintiff's] hand was wrapped, and

he was prescribed pain medication," and he received surgery approximately one year later after

"he was seen multiple times to determine if surgery was appropriate given, among other things, a

chronic cardiac condition" (citations omitted)); *Myrie*, 615 F. Supp. 2d at 247–48 (granting

motion to dismiss deliberate indifference claim where "[n]o facts are pleaded tending to show

that [the] defendant . . . took affirmative steps to ensure that [the plaintiff] would not receive his

[medical] treatment"); *cf. Madera v. Ezekwe*, No. 10-CV-4459, 2013 WL 6231799, at *12

(E.D.N.Y. Dec. 2, 2013) ("Courts have . . . refused to find deliberate indifference where delays

in treatment were caused by circumstances that were outside the control of the charged officials.

The logistical difficulties involved in scheduling outpatient appointments and transporting

prisoners to outside facilities can present one such circumstance.").  Additionally, in her Order

To Amend, Chief Judge McMahon held that Plaintiff's allegation that he did not receive surgery

until eight months after his evaluation, during which he attended "multiple preliminary

appointments to determine [his] fitness for the procedure," was insufficient to state a claim because "there are no facts in the [C]omplaint suggesting that anyone disregarded an excessive risk to Plaintiff's health." (Order 5.) This case is thus "similar to other cases where prisoners merely allege a delay in the provision of medication or treatment, but fail to allege that the delay was either intentional or reckless." *Bell*, 980 F. Supp. 2d at 562 (collecting cases); *see also Hernandez v. Keane*, 341 F.3d 137, 145–46 (2d Cir. 2003) (finding no deliberate indifference where "most of th[e] delay [in receiving surgery] was caused by factors outside [the] defendants' control," and that "[t]he intervals attributable to [the] defendants are . . . reduced to a matter of months, during which [the] plaintiff was either under evaluation for surgery or under treatment for other medical conditions"); *Waller*, 2018 WL 1605079, at *7 (dismissing deliberate indifference claim because "the alleged delay in scheduling surgery was minimal," and "[d]uring this time, [the] [p]laintiff's doctors were exploring other medical treatments, prescribing him pain medication, and allowing for [the] [p]laintiff to have access to medical care, as he claims to have been in medical . . . every other day" (citations and quotation marks omitted)).[3] Absent

---

[3] Although Plaintiff claims that Magill "must have known" that the delay would "increase Plaintiff's risk[]" of permanent injury because he identified the delay in aligning Plaintiff's finger as the reason it did not heal properly, (SAC 6), it is not enough that Magill may have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; "he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *cf. Viera v. City of New York*, No. 15-CV-5430, 2018 WL 4762257, at *13 (S.D.N.Y. Sept. 30, 2018) ("Deliberate indifference requires actual knowledge; thus, allegations that one would have or should have known will not satisfy the knowledge prong of deliberate indifference. It requires a deliberate choice, rather than negligence or bureaucratic inaction." (citation, alterations, and quotation marks omitted)). Plaintiff nowhere alleges that Magill, or any other Defendant, actually acknowledged any increased risk resulting from the eight-month delay. For example, there is no allegation that Magill informed Plaintiff that any delay decreased the chances of successful surgery, but made no effort to schedule his surgery sooner. Likewise, there is no allegation that Magill indicated that the need for surgery was urgent, or that his failure to schedule the surgery for an earlier date was based on improper considerations. Nor does Plaintiff allege that anyone ever identified the delay in surgery as the reason his finger never healed properly after surgery. *Cf. Kucharczyk v. Westchester County*, 95 F. Supp. 3d 529, 542

such allegations, the Second Amended Complaint suggests only that Magill acted, or failed to

act, with "negligence amounting to medical malpractice," which "is insufficient to state a claim

for deliberate indifference." *Whitley v. Ort*, No. 17-CV-3652, 2018 WL 4684144, at *8

(S.D.N.Y. Sept. 28, 2018) (citations and quotation marks omitted). Plaintiff's deliberate

indifference claim against Magill based on the delay in receiving surgery is therefore dismissed.[4]

### III. Conclusion

For the foregoing reasons, Provider Defendants' Motion To Dismiss is granted.

However, because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is

without prejudice. *See Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016)

(explaining that "district judges should, as a general matter, liberally permit pro se litigants to

amend their pleadings" unless "amendment would be futile" (citation omitted)). Should Plaintiff

choose to file a third amended complaint, he must do so within 30 days of this Opinion,

addressing the deficiencies identified herein. The third amended complaint will replace, not

---

(S.D.N.Y. 2015) (denying motion to dismiss deliberate indifference claims where a defendant told the plaintiff that "the surgery was not going to happen because [the] [p]laintiff's injuries were not life threatening, and he would therefore have to wait to receive surgery until he was transferred or . . . released" (citation omitted)); *Benjamin v. Schwartz*, 299 F. Supp. 2d 196, 201 (S.D.N.Y. 2004) (denying motion to dismiss where the plaintiff alleged doctor "*deliberately* failed to schedule him for needed surgery for almost two years, well knowing that excessive delay could mean permanent disability" (emphasis added)); *see also Dotson v. Fischer*, 613 F. App'x 35, 38–39 (2d Cir. 2015) (denying motion to dismiss where the defendants "reviewed [a doctor's] evaluation and recommendation that [the plaintiff's] condition demanded 'urgent' care and rejected it, apparently without causing him to be examined again in person or taking any further step," resulting in a year-long delay in the plaintiff's needed surgery).

[4] Because the Second Amended Complaint fails to state a deliberate indifference claim, the Court need not address Provider Defendants' argument that they are entitled to qualified immunity. (Defs.' Mem. 13–15.) Additionally, because Plaintiff's federal claim is dismissed, the Court declines to exercise supplemental jurisdiction over any state law claims that Plaintiff intended to assert for medical malpractice or negligence. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (noting that "if the federal claims [in an action] are dismissed before trial . . . the state claims should be dismissed as well" (citation omitted)).

supplement, the Complaint currently before the Court. It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. The Court will not consider factual allegations raised in supplemental declarations, affidavits, or letters. If Plaintiff fails to abide by the 30-day deadline, this action may be dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending motion, (Dkt. No. 47), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: July **10**, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE